In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-3202 & 13-1506

BANKMANAGERS CORPORATION and PARK BANK,

*Plaintiffs-Appellants*,

*v.*

FEDERAL INSURANCE COMPANY,

*Defendant-Appellee*.

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 11-C-871—**Rudolph T. Randa**, *Judge*.

ARGUED FEBRUARY 26, 2013—DECIDED APRIL 5, 2013

Before EASTERBROOK, *Chief Judge*, and ROVNER and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. From 1997 through 2009 Sujata Sachdeva, the vice president for accounting at Koss Corporation, instructed Park Bank, where Koss had an account, to prepare more than 570 cashier's checks. The checks were payable to Sachdeva's creditors and used to satisfy her personal debts. She embezzled about $17.4 million this way, pleaded guilty to several

federal crimes, and was sentenced to 11 years' imprison-ment. The SEC sued Sachdeva and an accomplice because their scheme (of which the checks from Park Bank were only a part) caused Koss to misstate its financial position. *SEC v. Sachdeva*, 2011 U.S. Dist. LEXIS 32544 (E.D. Wis. Mar. 16, 2011).

Koss and Park Bank are litigating in Wisconsin about which of them bears the loss. This federal suit, under the diversity litigation, pits Park Bank (and its parent, which we ignore) against its insurer. The Bank contends that Federal Insurance must defend and indemnify it under a financial-institution bond, sometimes called a fidelity bond, but which for simplicity we call an insur-ance policy.

Park Bank relies on Clause 2 of the policy, which prom-ises indemnity for "Loss of Property resulting directly from . . . false pretenses, or common law or statutory larceny, committed by a natural person while on the premises of" the Bank. The parties agree that Sachdeva did not enter the Bank's premises. She gave instructions by phone, then sent one of Koss's employees to fetch the checks. The district court concluded that this makes Clause 2 inapplicable and entered judgment in the in-surer's favor. 2012 U.S. Dist. LEXIS 129647 (Sept. 12, 2012).

Two jurisdictional issues require attention. The first is that the parties described Federal Insurance as a "stock insurance company." The question under 28 U.S.C. §1332 is whether it is a "corporation." See *Indiana Gas Co. v. Home Insurance Co.*, 141 F.3d 314, rehearing denied, 141 F.3d 320 (7th Cir. 1998). An amendment to the com-

plaint, filed after oral argument under 28 U.S.C. §1653, specifies that it is. Our own research supports this characterization.

The second problem stems from the fact that the complaint named Koss as a defendant. Park Bank is a citizen of Wisconsin; so is Koss. The complaint thus failed to invoke the diversity jurisdiction and should have been dismissed promptly. After the suit had been pending for a while, the parties noticed the problem. The Bank tried to have Koss realigned as a plaintiff—an inappropriate step, since Koss is not insured under the bond. Federal Insurance suggested that Koss be dismissed as irrelevant, a permissible way of securing jurisdiction. See *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989). The district court agreed but incongruously also entered judgment in Koss's favor on the merits. No one paid attention to this discrepancy until we alerted counsel at oral argument. With this court's permission, see Circuit Rule 57, the district judge has fixed the problem. Koss is out of the case, so jurisdiction is established.

The Bank concedes that every court that has considered the subject has held that a fraud orchestrated from outside a financial institution's premises is not covered under Clause 2 (which is industry-wide language from Form 24 of a fidelity bond). See, e.g., *Private Bank & Trust Co. v. Progressive Casualty Insurance Co.*, 409 F.3d 814, 818 (7th Cir. 2005) (Illinois law); *Oritani Savings & Loan Ass'n v. Fidelity & Deposit Co.*, 989 F.2d 635, 642 (3d Cir. 1993) (New Jersey law); *Southern National Bank of*

*North Carolina v. United Pacific Insurance Co.*, 864 F.2d 329, 332 (4th Cir. 1989) (North Carolina law). The objective of an "on premises" clause is to exclude coverage of schemes such as Sachdeva's. See American Bankers' Association, *Digest of Bank Insurance* §1.3.12 (4th ed. 1981 & Supp. 1984). All of the decisions we have just cited are by federal courts, but no state court has disagreed— and if the Bank wanted Wisconsin to be the first (perhaps by holding that on-premises acts of a wrong-doer's agent suffice), it should have filed this suit in state court. A federal court is supposed to enforce state law as it is rather than predict novelties.

According to the Bank, the decisions we have cited are irrelevant because they concern fraud, while it contends that Sachdeva committed larceny. Yet the on-premises requirement is the same whether the crime is fraud or larceny. The Bank belabors the contention that Sachdeva committed larceny, citing decisions for the proposition that if A sends an agent to steal B's property, then A has committed a crime even though A did not enter B's land. That's true enough but has nothing to do with Clause 2. To come within it, the Bank would need to establish that B (who does enter the victim's premises) commits larceny even if B is A's dupe and lacks the mental state required for conviction. Unsurprisingly, the Bank has not produced a decision from any of the 50 states establishing that the dupe can be convicted of larceny. Had Sachdeva asked the Bank to send the checks by mail or FedEx, the postal carrier or courier could not have been convicted of a crime. The Bank lacks an answer to the question why it should

matter, under Clause 2, why the criminal rather than the financial institution chooses the guiltless person who transports the checks.

Because the insurer need not defend or indemnify the Bank in its litigation against Koss, the parties' disputes about deductibles and attorneys' fees need not be addressed. The judgment is affirmed.